IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY DIDONATO, : | |
|    Plaintiff, : | No. 20-cv-4425-JMY |
| : | |
| v. : | |
| : | |
| BLACK & DECKER (U.S.), INC., : | |
|    Defendant. : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                           February 9, 2022

Currently before the Court is the Defendant's Motion for Summary Judgment (hereinafter "MSJ") (ECF No. 17) in which Defendant raises a Daubert challenge to the expert testimony of Andres J. Calderon, Ph.d. The Court finds this matter appropriate for resolution without oral argument.[1] See Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, Defendant's motion for summary judgment and combined Daubert Motion will be denied.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff's claims arise out of a May 23, 2018, accident that occurred at his business, Custom Coach, Inc., located in Upper Darby, Pennsylvania. On May 23, 2018, Plaintiff was buffing the side hood of a car with a DeWalt Model DW849 Polisher ("Polisher") manufactured

---

[1] A hearing is not required on a Daubert challenge if the district court can point to adequate support in the record for the challenged opinions—if the expert depositions, affidavits and briefing before the court are sufficient to support the court's findings. *Oddi v. Ford Motor Co.,* 234 F.3d 136, 154-55 (3d Cir. 2000) (rejecting argument that *Daubert* hearing was required where court had reviewed record which included two expert depositions, a declaration, and an expert report); juxtaposed to *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412 (3d Cir. Aug 2, 2019) (vacating a district court order that granted a Daubert motion and entered summary judgment in favor of the defendant where the record was scant). In *Padillas*, the Third Circuit was not persuaded by the fact that the plaintiff had not requested a *Daubert* hearing because the district court had an independent obligation to investigate the record before dismissing the action on a *Daubert* motion.

by Black & Decker, which he purchased in new condition in 2006.  (DiDonato Deposition page 44, 67-70, SJM Ex. B, ECF No. 17-6.)  While using the Polisher, a loose electric cord got caught on the exposed spindle shaft of the Polisher and lassoed his right (dominant) ring finger, severing it at the distal interphalangeal joint.  (*Id.* pages 121-122, 124.)  At deposition, Plaintiff testified that the loose electric cord was eighteen to twenty inches long and commonly used in his shop for utility purposes.  (*Id.* page 122.)  Plaintiff clearly testified that the electric cord became wrapped around the spindle shaft of the Polisher.  (*Id.*)  However, he also admitted that the accident occurred quickly when he looked away from his work after being distracted by someone who was trying to get his attention.  (*Id.* page 118.)  Plaintiff admitted that he did not know where the cord was located prior to the accident, or how it got entangled in the Polisher spindle shaft.  (*Id.* page 121-122., 124.)

In support of his contention that the Polisher was defectively designed, and with specific relevance to the pending Motions, Plaintiff offers the expert testimony of biomechanical and biomedical engineer Andres J. Calderon, Ph.d.  Calderon reviewed Plaintiff's account of the accident and examined the Polisher in comparison to other similar models currently on the market that were designed with covered spindle shafts.  (Calderon Report page 1, 4, 7, SJM Ex. J., ECF NO. 17-14.)  Calderon reached the conclusion that the Polisher was defectively designed because it did not have an enclosed or covered spindle shaft.  (*Id.* page 5, 8-9.)  He further opined that the Polisher's spindle shaft was not perfectly smooth and rounded; rather, it had flat edges that further contributed to an entanglement hazard.  (*Id.*)  In his expert report, Calderon opined, "It is known that rotating shafts, even if they rotate at a slow revolution, can create an entanglement hazard since cables, clothes, ropes and other items that come in contact with a rotating shaft can become entangled."  (*Id.* page 6.)  In comparing the Polisher with other models

on the market, Calderon opined that Defendant should have recognized this danger and covered the spindle shaft. (*Id.* page 5.)  Calderon compared the Polisher to models designed by other manufactures with covered spindle shafts and opined that it would have been both economically and functionally feasible for Defendant to have designed the Polisher with a covered shaft. (*Id.* page 7-8.)  Calderon sat for an expert deposition in connection with this matter in which he reaffirmed the opinions expressed in his expert report. (Calderon Deposition, MSJ, Ex. K, ECF No. 17-15.)

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In examining the defendant's motion, the court must view the facts in the light most favorable to the nonmovant, drawing all reasonable inferences in his favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).  Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried before a jury. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 255.

## III.    DISCUSSION

Defendant's motion for summary judgment incorporates a Daubert challenge (Daubert Motion) to preclude the expert opinions and testimony of Andres J. Calderon, Ph.d., who

Plaintiff offers as his biomechanical and biomedical engineer. Defendant argues that Calderon should be precluded from offering opinions, and then essentially seeks summary judgment by arguing that Plaintiff fails to produce the requisite expert testimony in support of his case. Defendant primarily avers that Plaintiff's design defect claims brought on theories of strict product liability and negligence fail for lack of expert testimony. Defendant raises a separate argument that summary judgment is warranted based on Plaintiff's inability to establish causation – that Plaintiff's careless use of the Polisher was actually to blame for the accident.

**A.     The Defendant Makes an Unpersuasive Daubert Motion**

The Defendant fails to make a compelling argument for striking the expert testimony and opinions offered by Calderon. Defendant does not formally attack the qualifications of Calderon.[2] Rather, Defendant focuses its Daubert challenge on the methods employed by Calderon in reaching his conclusions. Defendant further attacks the conclusion reached by Calderon, and, specifically, conclusions reached on the issue of causation that it avers do not "fit" the facts of the case. (MSJ page 14.) Stated in the most concise form, when determining the admissibility of expert testimony in the face of a Daubert challenge, courts have categorically evaluated Fed. R. Evid. 702 requirements by assessing (1) the expert's qualifications to render the opinions, (2) the reliability of the expert's methods, and (3) the "fit" of the expert's methods to the facts of the case (i.e., whether the expert's testimony will assist the finder of fact).[3] *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2000).

---

[2] Defendant indicates that for the purpose of its dual motion for summary judgment and Daubert motion, it does not dispute the qualifications of Andres Calderon, Ph.d. (MSJ page 16 n.22.) A review of his Curriculum Vitae indicates that Calderon is a biomechanical and biomedical engineer. (Curriculum Vitae of Andres J. Calderon, SJM, Ex. I, ECF No. 17-13.)

[3] The Daubert standard has been incorporated and codified into Fed. R. Evid. 702.

Defendant specifically places at issue the second and third elements of the legal approach that district courts employ for evaluating Daubert challenges.

In acting as a gatekeeper under Rule 702, the district court must screen the purportedly scientific evidence to ensure that any and all such proffered evidence is relevant, reliable and helpful to the trier of fact. *Schneider*, 320 F.3d at 404. The district court's inquiry is one of flexibility in which the focus rests solely on the principles and methods used by the expert, not on the conclusions drawn from them. *Daubert v. Merrel Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 594-95 (1993). Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

"[T]he reliability analysis applies to all aspects of an expert's testimony." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). An expert's opinion is reliable when it is based on "good grounds," *In re Paoli R.R. Yard PCB Litig. (Paoli II)*, 35 F.3d 717, 744 (3d Cir. 1994), i.e., it is "based on the methods and procedures of science rather than on [a] subjective belief or unsupported speculation." *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205 (3d Cir. 2013). The focus is not upon the expert's conclusions, indeed the test for reliability is not one of correctness, but upon the expert's methodology. *Paoli II*, 35 F.3d at 746. The issue is whether the evidence should be excluded because "the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.*

The Court of Appeals for the Third Circuit in *Paoli II*, enumerated eight factors that a district court may examine when determining reliability, yet they "are neither exhaustive nor applicable in every case." *Kannankeril v. Terminix Int'l., Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997). The factors include: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Paoli II*, 35 F.3d at 742 n.8.

For expert testimony to "fit", there must be a logical relationship between the proffered testimony and the factual issues involved in the case. *Paoli*, 35 F.3d 743, 745. The "fit" element "goes primarily to relevance." *Daubert*, 509 U.S. at 591. To be admissible, the expert testimony must assist the trier of fact in resolving a factual dispute. *Id.* With respect to the "fit" prong, the expert must "apply his experience reliably to the facts; his opinions must be well-reasoned, grounded in his experience, and not speculative." *Sargent v. Cmmw. of Pa.*, No. 13-730, 2015 U.S. Dist. LEXIS 145035, *3 (M.D. Pa. Oct. 26, 2015) (quoting *Roberson v. City of Phila.*, No. 99-3574, 2001 U.S. Dist. LEXIS 2163, *14 (E.D. Pa. Mar. 1, 2001)). The Court acknowledges that the standard for analyzing fit is "not that high." *Premier Comp Sols. LLC v. UPMC*, No. 15-0703, 2019 U.S. Dist. LEXIS 19814, *8-9 (W.D. Pa. Feb. 7, 2019) (citing *Paoli II*, 35 F.3d at 745). Yet, a court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and methodology used." *Heller*, 167 F.3d at 153.

1.  **Applying the Daubert Standard, the Court Will Not Find Calderon's Methodology Unscientific or Unreliable**

Defendant attacks the scientific methodology employed by Calderon primarily by arguing that he failed to conduct physical testing on the Polisher either in the field or in a laboratory. Defendant takes specific issue with the fact that Calderon failed to attempt to recreate the accident. (MSJ page 17-18.) The Court finds this argument unpersuasive.

By a preponderance of the evidence, Plaintiff carried his burden of proof and established that Calderon's testimony is based on reliable scientific methodology. Calderon has a Bachlor's Degree in Mechanical Engineering and a Master's Degree and Doctorate in Biomedical Engineering. (Curriculum Vitae of Andres J. Calderon, SJM, Ex. I, ECF No. 17-13.) A review of his expert report illustrates that Calderon reviewed Plaintiff's deposition transcript which explains his version of how the accident occurred. (Calderon Report page 1-3.) Calderon's expert report further established that Calderon examined, measured, and photographed the Polisher. (*Id.* page 4.) Calderon also reviewed the instruction manual, and the testimony of other individuals who were deposed in this matter – including the defense expert witness. (*Id.*) Finally, Calderon compared the Polisher to other models made by other manufactures that were designed with enclosed spindles. Calderon confirmed his methodology and approach as outlined in his expert report when he sat for an expert deposition in this matter. (Calderon Deposition.)

The fact that Calderon failed to attempt to entangle an electric cord in the spindle shaft of the Polisher to recreate the accident does not render his opinions unreliable as defined by the Daubert standard. Calderon's opinions appear to be based on his practical experience as a certified engineer, and his application of generally accepted principals in engineering to the facts of this case.

2.  **Applying the Daubert Standard, the Court Will Not Preclude the Causation Opinions Offered by Calderon**

Defendant argues that the causation opinions offered by Calderon are unreliable because he did not witness the accident, and it argues that he merely relies on the testimony of the Plaintiff to formulate his causation opinions. (SJM page 18, 21.) Defendant points out that it is unclear where the loose electric cord was located prior to the accident, and how it purportedly became entangled in the Polisher. (*Id.*) Defendant further suggests that the loose electric cord could have become entangled in the pad of the Polisher instead of the spindle shaft. (*Id.*)

The Court is not persuaded that the causation opinions offered by Calderon should be precluded under the Daubert standard. Plaintiff admits that the accident occurred quickly while he was distracted, and that he is uncertain about how the accident occurred. (DiDonato Deposition page 121-122, 124.) At deposition, however, Plaintiff clearly testified that a loose electric cord became wrapped around the spindle shaft of the Polisher which entangled his right ring finger thereby severing the tip. (*Id.*) Calderon's causation opinions about the flat sided, uncovered shaft of the Polisher spindle creating a hazard can properly be based on Plaintiff's account of the accident. Overall, the Court believes that Defendant's challenges to Calderon's testimony present questions concerning the underlying factual foundation and basis for his opinions that are properly resolved by the jury after considering the conflicting evidence presented by both parties at trial. *Daubert*, 509 U.S. at 595-596 ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

B. **Claims of Design Defect Based on Theories of Strict Product Liability and Negligence Survive Summary Judgment as well as Claims for Breach of Implied Warranty of Merchantability**

Plaintiff has come forward with sufficient evidence of design defect to survive Defendant's motion for summary judgment. Plaintiff's testimony as to how the accident occurred in conjunction with the opinions offered by Calderon establishes that issues of material fact remain on a "risk-utility" product liability design defect theory. Calderon offers the opinion that reasonably priced, feasible design alternatives could have been employed by Defendant to design the Polisher with a covered spindle shaft. Therefore, the Court will not enter summary judgment on Plaintiff's product liability claims.

In its Motion for summary judgment, Defendant offers little explanation or argument for why it believes that negligent design theories or theories for breach of an implied warranty of merchantability should be dismissed from this action. In light of the fact that the Court will not strike Calderon's expert opines, the Court will not enter summary judgment on these claims. Plaintiff's account of how the accident occurred in conjunction with Calderon's expert testimony creates issues of material fact as to Plaintiff's negligence and implied warranty claims.

C. **The Court Will Not Enter Summary Judgment by Finding as a Matter of Law that the Plaintiff's Carelessness or Failure to Follow the Instruction Manual was the Cause of the Accident**

Defendant argues that summary judgment is warranted because Plaintiff's carelessness was the true cause of the accident. (SJM page 27-28.) It cites the fact that Plaintiff admittedly failed to turn the Polisher off before responding to the co-worker or person who was trying to get his attention. (*Id.*) Defendant further argues that Plaintiff failed to keep a clean work area when he permitted the loose electric cord to remain in the workspace where he was operating the Polisher.

The Court will leave theories of comparative negligence or causation as issues to be developed at trial. It will not grant summary judgment based on a theory that the Defense will present at trial or its affirmative defenses. Where the loose electric cord was located or whether the Plaintiff kept a clean workplace might be relevant but is not dispositive of issues in this case. *See Moyer v. United Dominion Indus., Inc.,* 473 F.3d 532, 542 (3d Cir 2007); *Wright v. Ryobi Techs, Inc.*, 175 F. Supp. 3d 439, 448-49 (E.D. Pa. 2016).

## IV. CONCLUSION

The record as it stands is sufficient to withstand Defendant's dual motion for summary judgment and Daubert motion. Therefore, for the above stated reasons, Defendant's motions will be denied.

BY THE COURT:

　/s/ John Milton Younge　
Judge John Milton Younge